UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANDRES A.B.,[1]

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-01707-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner Andres A.B.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed an Answer. (ECF No. 7.) Petitioner filed a reply. (ECF No. 12.) At the Court's request, the parties filed supplemental briefing. (ECF Nos. 27, 29.) For the reasons set forth below, the Petition is GRANTED.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from Petitioner's allegedly unlawful detention by federal immigration authorities. (ECF No. 1.) Petitioner entered the United States approximately thirteen years ago without inspection or parole.[2] (*Id.* at 6; ECF No. 7-1 at 45.)

On December 10, 2019, Petitioner was convicted under California Penal Code § 186.22(a) for Participation in a Criminal Street Gang and was sentenced to sixteen months in prison. (ECF No. 7 at 1.) He was arrested several times since then for parole violations, robbery, burglary, and assault with a deadly weapon. (ECF No. 7-1 at 48–50.) One of these parole violation charges resulted in a 135-day jail sentence.[3] (*Id.*) The Form I-213 states Petitioner is a member of the gang MS-13. (ECF No. 7 at 2.)

On April 16, 2024, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officers. (ECF No. 7-1 at 45.) Since at least March 2, 2026,[4] Petitioner has been held at the California City Detention Center. (ECF No. 1 at 3; ECF No. 28 at 1.) Petitioner made several requests for a bond hearing during that time, but withdrew them. (ECF No. 7 at 2.) He was ordered removed on September 5, 2024. (*Id.*) The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of the removal order on February 6, 2025. (*Id.*) Petitioner filed a petition for review of that decision with the Ninth Circuit, which remains pending. (*Id.*)

Petitioner filed the instant Petition for Writ of Habeas Corpus on March 2, 2026, alleging that his detention violates his rights under the Fifth Amendment Due Process Clause. (ECF No. 1 at 16.) The Court issued a Temporary Restraining Order ("TRO") on April 2, 2026, directing Respondents to hold a bond hearing for him. (ECF No. 15.) This hearing took place on April 7,

---

[2] The precise date is not clear from the Petition or Respondents' records. (*See* ECF No. 1; ECF No. 7-1 at 43; ECF No. 12 at 2.)

[3] Petitioner's RAP sheet simply states "135 days jail," but it appears that no other charges aside from a parole violation were pending at that time.

[4] This is the date the Petition was filed, in which Petitioner identifies his place of confinement as California City Detention Facility. (ECF No. 1 at 3.) Petitioner's counsel states in her supplemental briefing that Petitioner has been confined there "[f]or the past several months." (ECF No. 28 at 1.) The precise amount of time is unclear.

2026, and the immigration judge denied bond, finding him a danger and a flight risk.[5] (ECF No. 17 at 3.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner alleges his detention violates his right to substantive due process[6] under the Fifth Amendment's Due Process Clause. (ECF No. 1 at 17.) At the Court's direction, the parties have submitted briefing regarding the application of the five-factor test articulated in *Doe v. Chestnut,* 810 F. Supp. 3d 1169 (E.D. Cal. 2025) to Petitioner's detention. (ECF Nos. 26, 27, 28.) Petitioner contends these factors favor finding a substantive due process violation and ordering his immediate release. (ECF No. 28.) Respondents argue this test does not apply to Petitioner's detention, but even if it did, the factors would not warrant release. (ECF No. 27.)

---

[5] Petitioner filed a motion to enforce the TRO, alleging that it did not comply with the Court's Order. (ECF No. 17.) Finding release warranted on Petitioner's substantive due process claim, the Court denies the motion as moot.

[6] In its Order directing the parties to file additional briefing, the Court "liberally" construed the habeas petition "as a pro se pleading . . . to allege procedural and substantive due process violations." (ECF No. 26.) Finding relief warranted under Petitioner's substantive due process claim, the Court declines to address Petitioner's procedural due process claim in favor of judicial economy.

"[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Substantive process prohibits detention if it "becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (citing *United States v. Salerno*, 481 U.S. 739, 747 (1987)).

The *Doe v. Chestnut* factors were originally set forth in *Doe v. Becerra* (*Becerra II*), 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024), to analyze whether immigration detention violates a noncitizen's substantive due process rights:

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
>
> (2) the government's contribution to any delay;
>
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
>
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
>
> (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held.

*Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1183–84 (E.D. Cal. 2025) (quoting *Becerra II*, 732 F. Supp. 3d at 1080). The Court considers each of these factors in turn.[7]

///

---

[7] As a threshold matter, Respondents contend the five-factor test detailed in *Chestnut*, 810 F. Supp. 3d 1169 is "no longer good law" because the Ninth Circuit overruled *Becerra II*. (ECF No. 27 at 1 (citing *Doe v. Albarran, et al.*, No. 24-4389, (9th Cir. summary disposition granted May 28, 2026)).) As Petitioner correctly points out, however, the Ninth Circuit did not address the propriety of the five-factor test articulated in *Becerra II*, but instead applied the "immediate custodian rule" (in holding that if a habeas petition fails to name the official exercising direct control over the petitioner's present custody, the petition should be dismissed or transferred to the district of confinement). (ECF No. 28 at 2 n.1) (citing *id.*) The Court has previously found the reasoning of *Becerra II* persuasive and applied this test to analyze substantive due process violations claimed by federal immigration detainees. *Grigoryan v. Andrews*, No. 1:26-cv-03305-TLN-SCR, 2026 WL 1983929 (E.D. Cal. July 9, 2026), *report and recommendation adopted as modified sub nom. Vahram G. v. Andrews*, No. 1:26-cv-03305-TLN-SCR, 2026 WL 2413529 (E.D. Cal. Aug. 18, 2026).

A. Length of Detention

While "it has . . . never been clearly delineated in the context of immigration detention" when the length of detention results in a violation of the detainee's substantive due process rights, it is "undisputed" that such a limit exists. *Doe v. Becerra* (*Becerra I*), 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (quoting *Torres*, 995 F.3d at 708). "There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit." *United States v. Briggs*, 697 F.3d 98, 103 (2d Cir. 2012).

Respondents argue there "is no bright line rule on the length of detention" and the length of Petitioner's detention is meaningfully shorter than in *Chestnut* and *Becerra II*. (ECF No. 27 at 2.) Petitioner emphasizes that he has been held for more than twenty-eight months and cites to the Ninth Circuit's statement in *Torres*, 995 F.3d at 710, that in the criminal pretrial context, twenty-one months of detention was "approaching the limits of what due process can tolerate."[8] (ECF No. 28 at 9.)

The Court finds persuasive the *Torres* court's characterization of twenty-one months of detention as close to the constitutional limit. *See also United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019) (explaining that "delays approaching one year are presumptively prejudicial" for Sixth Amendment purposes). Nevertheless, "[t]he duration of detention itself must be weighed against . . . preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [Petitioner's] detention mitigates them." *Becerra II*, 732 F. Supp. 3d at 1083.

As discussed below, the Court finds that Petitioner's criminal history provides some evidence of flight risk and danger, but in weighing whether his detention is justified by its regulatory purpose, the Court notes that Petitioner has now been detained for longer than state courts saw fit to criminally sentence him for the underlying crimes. (ECF No. 7 at 1–2 (noting that Petitioner was sentenced to sixteen months' imprisonment for violation of California Penal

---

8 Petitioner also alleges he is incarcerated "in a punitive setting with constitutionally inadequate health care and unpotable water." (ECF No. 28 at 9.) The Court considers these claims in analyzing the conditions of Petitioner's detention.

Code § 186.22(a) and 135 days in jail for a parole violation).) Other courts have found the length of detention prolonged when it lasted more than 24 months. *Grigoryan*, 2026 WL 1983929, at *6 (citing cases).

When coupled with the Court's findings regarding the punitive conditions of Petitioner's confinement, the Court concludes that the length of Petitioner's detention has become excessive in relation to its regulatory purpose.

Thus, the first factor weighs in favor of Petitioner.

B. <u>Government Contribution to Delay</u>

Next, the Court considers whether the government is responsible for "delays that have contributed to the duration of detention." *Becerra II*, 732 F. Supp. 3d at 1083; *see also* *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued").

Respondents contend the delay is attributable to Petitioner's choice to file those proceedings, not due to any conduct of the government. (ECF No. 27 at 2–3.) Petitioner argues that his detention has been prolonged, through no fault of his own, due to his ongoing challenge of his removal order in the Ninth Circuit. (ECF No. 28 at 9–10.)

Petitioner does not allege any government conduct which prolonged his detention. However, the Court declines to consider Petitioner's choice to pursue lawful methods to challenge his removal order as "contribution to delay." *Cf. Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("This does not redound to [Petitioner's] discredit, as the government would have it. The BIA appeal and remand motion are perfectly legitimate proceedings he is legally entitled to pursue, and it ill suits the United States to suggest that he could shorten his detention by giving up these rights and abandoning his asylum application.")

Thus, the Court considers the second factor to be neutral.

C. <u>Evidence of Flight Risk and Danger</u>

In evaluating the third factor, the Court considers "the government's regulatory purposes

[in] limiting flight risk and preventing danger to the community. So determining whether [Petitioner's] prolonged detention has become punitive requires considering the extent to which it serves those purposes." *Becerra II*, 732 F. Supp. 3d at 1083.

Respondents argue Petitioner is a flight risk and danger because of his conviction under California Penal Code § 186.22(a) for Participation in a Criminal Street Gang, his conviction for a parole violation, and his arrests for robbery, assault with a deadly weapon, burglary, and other parole violations. (ECF No. 27 at 3–4.) Respondents also argue that Petitioner is a member of MS-13, which is a designated terrorist organization. (*Id.*)

Petitioner contends that detention is not justified by any alleged flight risk or danger. (ECF No. 28 at 11.) Petitioner asserts that Respondents have not provided sufficient evidence that these offenses involved violence or the possession of a firearm, or that he is a member of MS-13. (*Id.* at 11–12.) Finally, Petitioner argues the alleged parole violations are not evidence of flight risk because they have not been substantiated, and he was arrested by immigration authorities in his home within six days of the most recent alleged violation. (*Id.* at 12.)

As a threshold matter, Petitioner's charges for robbery and assault with a deadly weapon were dismissed, and Respondents' records do not establish that Petitioner was ever convicted of burglary. (ECF No. 7-1 at 48–50.) To the extent Respondents rely on dismissed charges or arrests which did not result in a charge to justify Petitioner's detention, the Court agrees with Petitioner that this raises significant due process concerns. *Cf. Singh v. Chestnut*, No. 1:26-CV-00546-DJC-AC, 2026 WL 266021 at *2 (E.D. Cal. Feb. 2, 2026) (applying canon of constitutional avoidance to interpret 8 U.S.C. § 1226(c) to apply only to currently charged offenses, and not those which have been dismissed or of which the petitioner has been acquitted).

The Court agrees with Respondents that Petitioner's convictions for Participation in a Criminal Street Gang and violating his parole are some evidence of flight risk and danger. Violation of parole is, obviously, evidence that the defendant disobeyed a court's order imposed in lieu of imprisonment. However the Court agrees with Petitioner that the record does not establish that his offenses were violent. (ECF No. 28 at 11–12.)

Petitioner was charged under California Penal Code § 186.22(a) and not subsection (b).

Subsection (a) criminalizes "willfully promot[ing], further[ing], or assist[ing] in felonious criminal conduct by members of [a] gang" but unlike subsection (b) does not require that the defendant be "convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang." Cal. Penal Code § 186.22(a), (b). Further, Petitioner was sentenced to a term of sixteen months, which is the minimum term available for a felony violation of subdivision (a). *Id.* § 186.22(a). If Petitioner had been found to have committed a serious or violent felony pursuant to subsections (b)(1)(B) or (b)(1)(C) he would have received a five- or ten-year enhancement. *Id.* § 186.22(a) (b)(1)(B)–(b)(1)(C) (stating that "the person *shall be* punished by an additional term of" five or ten years") (emphasis added).

Thus, Petitioner's conviction under California Penal Code § 186.22(a) does not establish that he committed a violent offense.

With respect to Respondents' contention that Petitioner is a member of MS-13, the record discloses no convincing evidence that this is the case. Respondents cite to a statement in the government's Form I-213 issued upon Petitioner's arrest which simply states that Petitioner "is a documented GANG MEMBER . . . MS 13." (ECF No. 27 at 3 (citing ECF No. 7-1 at 46).) The Court is not persuaded by the government's citation to nothing more than its own assertion in administrative documents as evidence to support its assertion in these proceedings.

Therefore, the Court finds that while there is some evidence of Petitioner's flight risk and danger, that evidence is not sufficient to justify Petitioner's lengthy detention, particularly when it has exceeded the aggregate length of Petitioner's time in criminal custody.

Thus, the third factor, on balance, and in appropriate context, weighs moderately in favor of Petitioner.

D. <u>Alternatives to Detention</u>

Next, the Court considers whether the government's interest in protecting the community and ensuring Petitioner's appearance at immigration court proceedings could be protected through alternatives to detention that are less restrictive. *Becerra II*, 732 F. Supp 3d at 1080.

Respondents largely repeat their arguments with respect to the previous factor and contend that Petitioner's arrests and convictions demonstrate that no alternatives to detention

could mitigate Petitioner's dangerousness or risk of flight. (ECF No. 27 at 4.) Petitioner cites to the *Chestnut* court's discussion of the efficacy of ICE's Intensive Supervision Appearance Program and states that he "readily consents" to GPS monitoring and any conditions the government wishes to impose upon his release. (ECF No. 28 at 13–14 (citing *Chestnut*, 810 F. Supp. 3d at 1198–99).)

The Court is unpersuaded by Respondents' citation to Petitioner's criminal history for the same reasons set forth above. For those reasons, the Court finds that any risk of danger or flight can be appropriately mitigated by alternatives to detention.

Thus, the fourth factor weighs in favor of Petitioner.

E. Conditions of Detention

"[A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). Conditions of confinement are punitive if they are not "rationally related to a legitimate nonpunitive governmental purpose [or] appear excessive in relation to that purpose." *Bell v. Wolfish*, 441 U.S. 520, 561 (1979). "The conditions of confinement also inform whether the duration of detention has become punitive." *Becerra II*, 732 F. Supp. 3d at 1088. Informative for this inquiry is whether "the conditions [of Petitioner's confinement] are harsher than those he faced in state prison, which were by definition intended to punish." *Id.*

Respondents contend the Court cannot appropriately consider this factor because the proper forum for doing so would be a civil rights action. (ECF No. 27 at 4.) Nevertheless, Respondents maintain that Petitioner has not made specific allegations with respect to the conditions of his detention beyond "vague claims that the conditions are terrible and that his health suffered." (*Id.* at 5.) Petitioner identifies a number of ways that the conditions of his detention are punitive, substandard, and excessively harsh. Petitioner asserts he lacks access to clean water and sufficient food, cannot sleep properly, and "is allowed outside for approximately one hour every four days; otherwise, he is restricted to his dormitory." (ECF No. 28 at 1–2.)

The Court rejects the contention that it cannot consider the conditions of Petitioner's confinement in adjudicating this substantive due process claim. For that proposition,

Respondents cite *Brown v. Blanckensee*, 857 F. App'x 289, 290 (9th Cir. 2021). In *Blanckensee* the Ninth Circuit affirmed the dismissal of a habeas petition where the petitioner alleged that "the Bureau of Prisons violated his right to due process and his First Amendment rights of access to the courts and to his legal property by seizing his property, including legal documents, medical records, and religious documents, and by interfering with his efforts to seek administrative remedies." 857 F. App'x at 290. Petitioner does not make any claims regarding seizure of his property or interference with administrative remedies, rather he argues that his imprisonment is unconstitutional. (ECF No. 1 at 17.) It is well-established that federal immigration detainees may challenge the legality of their imprisonment as a violation of the right to due process. *Zadvydas*, 533 U.S. at 687; *Nielsen v. Preap*, 586 U.S. 392, 420 (2019).

Respondents cite to *Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979) in support of their argument that "release is not an appropriate remedy for petitioners challenging the conditions of their confinement." (ECF No. 27 at 4.) The petitioner in *Crawford*, however, "[did] not challenge the legality of his imprisonment. Instead, the petition allege[d] that the terms and conditions of his incarceration constitute cruel and unusual punishment, violate his right to due process, and invade his constitutionally protected privacy." *Id.* at 891–92. In the instant case, Petitioner explicitly challenges the legality of his imprisonment, and the conditions of his confinement are relevant to that inquiry. (ECF No. 1.); *see Becerra II,* 732 F. Supp. 3d at 1079–81 (explaining the court's reasons for considering conditions of confinement and citing cases). Due process prohibits "an individual detained under civil process" from being "subjected to conditions that 'amount to punishment.'" *Blanas*, 393 F.3d at 932 (quoting *Wolfish,* 441 U.S. at 536). The typical remedy in habeas corpus for a violation of the petitioner's rights is release. *See Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002) (describing release as the "usual remedy of a habeas petition").

Respondents have submitted no evidence whatsoever regarding the conditions of Petitioner's detention, and aside from complaints that his allegations are "vague," offer nothing to dispute them. *See Chestnut*, 810 F. Supp. 3d at 1201 ("Indeed, despite being invited to submit argument and evidence regarding these factors, Respondents have chosen not to submit any

evidence at all regarding Petitioner's conditions of confinement.")

Petitioner's serious allegations regarding substandard conditions, by contrast, are supported not only by his own statements, and those of his counsel, but are well documented in the government reports Petitioner cites, which are appropriate subjects of judicial notice. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under [Federal] Rule [of Evidence] 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies.") (citing *Hansen Beverage Co. v. Innovation Ventures, LLC,* No. 08–CV–1166–IEG, 2009 WL 6597891, *1 (S.D.Cal. Dec. 23, 2009)). Petitioner is employed at the facility cleaning the dormitory, and receives $1 a day for this work, whereas a single packet of soup costs $1.75 and a fifteen-minute phone call costs $2.25. (ECF No. 28 at 2.) Petitioner describes the conditions at California City Detention Center as "horrific," "inhumane," and alleges that "no regulatory purpose could possibly be served by holding human beings there for an extended period of time." (*Id.* at 5.)

Petitioner cites to a report issued by the California Department of Justice describing substandard conditions and medical neglect. (ECF No. 28 at 5–9 (citing Rob Bonta et al., *Immigration Detention in California: A Review of Conditions of Confinement* (May 2026), https://oag.ca.gov/system/files/media/immigration-detention-2026.pdf (accessed August 31, 2026) (hereinafter *Cal DOJ Report*)).) This report documented that detainees experienced "unnecessarily long periods locked down in their cells," "crisis-level healthcare understaffing," "inadequate food quantities," inadequate access to the outdoors and recreation, and "extremely cold temperatures, with leaks during rainy periods." *Cal DOJ Report* at 143-44 (cited at ECF No. 28 at 5–8). These conditions resulted in such "tremendous suffering" that "detainees wept when describing" them. *Id.* at 144 (cited at ECF No. 28 at 7). California City was routinely described by detainees as significantly worse than other immigration detention facilities. *Id.* at 143 (cited at ECF No. 28 at 1–2) ("Detainees widely conveyed to Cal DOJ that their experiences were far superior at other facilities compared to Cal City."). Investigators from the California Department of Justice were so alarmed by the conditions they observed that they "determined that the facility

required an expedited notification regarding the substandard conditions to relevant stakeholders in advance of the publication of [the] report." *Id.* (cited at ECF No. 28 at 5–9).

Petitioner notes that reports of substandard medical treatment continue despite the appointment of a court-ordered monitor, including as recently as August 25, 2026, in a letter sent by members of Congress to Secretary Mullin and Acting Director Venturella. (ECF No. 28 at 14 (citing Letter from Frank Pallone, Jr., et. al., to Markwayne Mullin, David Venturella (Aug. 25, 2026) (archived at [https://pallone.house.gov/sites/evo-subsites/pallone.house.gov/files/evo-media-document/letter-on-health-situation-in-ice-detention-centers_final-compressed.pdf](https://pallone.house.gov/sites/evo-subsites/pallone.house.gov/files/evo-media-document/letter-on-health-situation-in-ice-detention-centers_final-compressed.pdf)) ("The monitor concluded that the facility lacked a reliable system for consistently providing adequate health care and that these deficiencies placed detainees at risk of immediate and long-term harm.")).)

The Court therefore finds the conditions of Petitioner's confinement are at least as harsh as those of criminal custody, are not rationally related to a legitimate governmental purpose, and are therefore punitive.

The final factor thus weighs strongly in favor of Petitioner.

On balance, the Court finds that the factors weigh in favor of Petitioner. His detention therefore violates his right to substantive due process.

## IV. REMEDY

Finally, the Court considers the appropriate remedy.

> "Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" *Hilton v. Braunskill*, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 [] (1973) (footnote omitted).

*Chestnut*, 810 F. Supp. 3d at 1202. The usual remedy granted along with the writ of habeas corpus is immediate release, but pursuant to its broad discretion in habeas matters, the Court may impose conditions on this release as it sees fit. *See id.* (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at

future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); *Zadvydas*, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

In light of the substantive due process violation, the Court will order Petitioner's release. However, recognizing that Petitioner's convictions for gang-related activity and previous violation of his parole pose legitimate concerns regarding his danger to the community and risk of flight, the Court will order the parties to meet and confer regarding which conditions of release are appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) The Court further ORDERS as follows:

1. Within **five days**, the parties shall meet and confer and submit a joint statement regarding proposed conditions of release, which shall include GPS location monitoring and any other conditions the parties believe will mitigate the risks involved in Petitioner's release from detention;

2. Respondents shall be prepared to release Petitioner within 12 hours after submission of joint statement of proposed conditions, or as soon thereafter as ordered by the Court;

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any

such hearing, Petitioner shall be allowed to have counsel present;

4. Petitioner's Motion to Enforce Temporary Restraining Order (ECF No. 17) is DENIED as moot;

5. Petitioner's Motion to Proceed in Forma Pauperis is DENIED as moot (ECF No. 14);

6. **The Clerk of the Court is directed to serve California City Detention Center with a copy of this Order**; and

7. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: September 2, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE